IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA


| | |
|---|---|
| Shaun Wayne Wiles, #284696,       ) | CIVIL ACTION NO. 9:09-0634-CMC-BM |
|       ) | |
|       Plaintiff,       ) | |
|       ) | |
| v.       ) | |
|       ) | |
| Jon E. Ozmint, Director of the South Carolina   ) | |
| Department of Corrections; Robert Ward,   ) | |
| Director for the Division of Operations of SCDC;  ) | **REPORT AND RECOMMENDATION** |
| James Sligh, Operations Coordinator for the   ) | |
| Division of Operations of SCDC; Bernard McKie, ) | |
| Warden of Kirkland Correctional Institution;   ) | |
| Dr. Russell Campble, Former Medical Director  ) | |
| of SCDC; Dr. Michael Beinor, Current Medical  ) | |
| Director of SCDC; and Dr. John Solomon,   ) | |
| Mental Health Director of SCDC,     ) | |
|       ) | |
|       Defendants.      ) | |
| _____) | |


This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983.

Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations

of his constitutional rights because his cell is illuminated twenty-four hours a day and because he is

being housed with mentally ill inmates.

The Defendants originally filed a motion for summary judgment pursuant to Rule 56,

Fed.R.Civ.P. on June 11, 2009, arguing that Plaintiff's claims were barred by the doctrine of res



1

judicata since he had already litigated the issue of his twenty-four hour cell illumination in Wiles v. Ozmint, No. 05-2111, 2006 WL 2260136 (D.S.C. Aug. 7, 2006) [hereinafter Wiles I].  In an Order issued October 20, 2009, the Honorable Cameron McGowen Currie, United States District Judge, granted Defendants' motion with respect to any claim being asserted in the case at bar contesting the constitutionality of SCDC's twenty-four cell illumination policy as to any alleged effects on Plaintiff prior to the entry of judgment in Wiles I.  Defendants' motion was denied, however, as to Plaintiff's claims allegedly arising since the conclusion of his previous lawsuit, and was also denied with respect to Plaintiff's allegations relating to being housed with mentally ill inmates.  See Order filed October 20, 2009.

Following additional discovery, the Defendants filed a second motion for summary judgment with respect to Plaintiff's remaining claims on May 19, 2010.  As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on May 20, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response.  Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case.  After additional extensions of time and discovery, Plaintiff filed a memorandum in opposition to summary judgment, with attached exhibits, on August 9, 2010, following which the Defendants filed a reply memorandum on August 19, 2010.

The Defendants' second motion for summary judgment is now before the Court for disposition.[1]

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.  The Defendants have filed a motion for summary judgment. As this is a dispositive motion this Report and Recommendation is entered for review by the Court.



2

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that his constitutional rights have been violated because the Defendants "have and continue to deprive the Plaintiff of adequate shelter, medical and mental health care, and reasonable safety by exposing him to inhumane conditions of confinement . . . .". Plaintiff alleges that since July 8, 2005, he has been housed in the maximum security unit (MSU) at his prison, where his cell is illuminated twenty-four hours a day. Plaintiff alleges that this policy "has and continues to cause him [serious physical and psychological ailments], and has a high potential of causing him the very serious said ailments in the future". Plaintiff alleges that the Defendants continue with this policy, even though they could instead install a camera in his cell with night vision capabilities.

Plaintiff also alleges that being held in a constantly illuminated cell places him at a substantial risk of other physical and psychological ailments, such as colon, prostate, bladder and intestinal cancer; heart disease; high blood pressure; strokes, accelerated ageing; mood swings; and immunodeficiency. Additionally, Plaintiff complains that his cell is on a wing that contains "mentally ill inmates . . . . some of whom that are continuously screaming and yelling, signing and talking very loud to themselves, banging on doors, smearing and/or throwing feces, urinating and defecating on the floors and elsewhere, not showering, etc.". Plaintiff alleges that these activities together with his constant cell illumination interfere with his ability to "engage in the basic performs of daily activities to wit: eating, exercise, brushing teeth, and reading; due to the causation of severe

---

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



migraines, sleep deprivation, fatigue, disorientation, and depression." Plaintiff also alleges that

being housed in this manner has caused him to suffer from increased problems with impulse control,

and an impaired ability to think, concentrate, or remember.

Plaintiff has attached to his complaint a letter dated May 8, 2008 from Dr. William

Hrushesky, a physician at the WJB Dorn Department of Veterans Affairs Medical Center in

Columbia, wherein Dr. Hrushesky opines that there is a clear connection between light exposure at

night and a wide variety of illnesses, including growth rates of "experimental" cancers probably

mostly caused by suppressing melatonin. Dr. Hrushesky refers to this phenomenon as "circadian

disruption", and states that the best way to prevent illnesses from light exposure at night is to have

at least eight hours of uninterrupted nocturnal darkness each night so that melatonin production is

not prohibited. Dr. Hrushesky also states in this letter that other enforcers of healthy circadian time

structure include regular schedules of sleep, wake and eating with daily morning exercise, and daily

morning bright light exposure. See Exhibit 1 to Plaintiff's Complaint.

Plaintiff also alleges in his complaint that he has submitted numerous Request to Staff

forms asking that the light be turned off in his cell, to no avail; see Exhibit B to Plaintiff's Complaint

[Request to Staff Forms]; and that he has exhausted his administrative remedies with respect to this

claim. Plaintiff has attached to his complaint as Exhibit C documents that he contends support this

assertion, one of which, a copy of inmate correspondence dated July 24, 2008 to the Plaintiff from

the Defendant Robert Ward, Director of Division Operations for the Department of Corrections,

reads in part:

> Inmate Wiles, your SCDC record reflects that you have three Class I Escapes and one
> in which you attempted to escape from MSU at Kirkland. Because of those Escapes,
> you have been listed as a security risk inmate and placed in MSU. Due to escaping
> from your cell while at MSU, a decision was made that you should be placed in a



> camera cell and that the lights be left on 24 hours a day for constant surveillance.
>
> This procedure was put in place for all inmates at MSU that have tried to Escape while being housed at MSU. It is my understanding that you filed a lawsuit in reference to this procedure and the Judge ruled in the State's favor based on the aforementioned details.

See Plaintiff's Complaint, Exhibit C-10.

In this lawsuit, Plaintiff seeks a preliminary and permanent injunction against the Defendants preventing them from housing him in a constantly illuminated cell and exposing him to mentally ill inmates, a complete physical examination, and monetary damages. See generally Verified Complaint with attached Exhibits.

In support of summary judgment in the case, the Defendant Bernard McKie has submitted an affidavit wherein he attests that he is the Warden at the Kirkland Correctional Institution (KCI), where Plaintiff is housed in the Maximum Security Unit (MSU). McKie attests that the MSU is a specialized housing unit for inmates who have demonstrated an unwillingness to conform to the rules and regulations of a Special Management Unit (SMU) or who have been charged with violent criminal behavior committed while in the general population. The MSU also houses inmates for whom emergency placement has been ordered by the Agency Director or the Deputy Director for Operations. The operation of the MSU is governed by SCDC Policy No. OP-22.11, a copy of which is attached to McKie's affidavit as Exhibit A.

Plaintiff is a well established escape risk, which is recounted by McKie in his affidavit and in attached Exhibits B, C and E. McKie also sets forth SCDC's rationale for keeping Plaintiff in twenty-four hour cell illumination, and the justification for that policy. See generally, McKie Affidavit, with attached Exhibits. Plaintiff's history of being an escape risk, resulting in his assignment to the MSU, was thoroughly discussed and established in Wiles I. Similarly, the issue



of the constitutionality of the twenty-four hour cell illumination policy at issue has already been determined. See Wiles I. Therefore, those issues have already been resolved for purposes of Plaintiff's claims. Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970). ["The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time. Once was sufficient."].

The Defendants have also submitted an affidavit from Curtis McGown, a physician employed by the Department of Corrections. McGown attests that he has reviewed Plaintiff's medical records for the past three years (the period of time since the judgment issued in Wiles I), a copy of which are attached to his affidavit as Exhibit B. McGown attests that he also has personally treated the Plaintiff numerous times as a physician assigned to the sick call unit at the MSU.

McGown attests that Plaintiff has sent numerous complaints to the nursing and medical staff, complaining of, among other ailments, insomnia, headaches, skin rash, back aches, chest pain, as well as a "litany" of other complaints. McGown has personally been involved in addressing Plaintiff's concerns on ten or more occasions. McGown attests that, to his knowledge, there is no connection between the conditions of Plaintiff's confinement and his headaches, nor do Plaintiff's medical records reflect any diagnosis of fatigue, sleep deprivation, or depression. McGown attests that Plaintiff is housed in a very restrictive environment which naturally creates an amount of stress for him which could lead to headaches and anxiety, and that he has received medication for his complaints of headaches and other problems throughout his confinement in the MSU. With respect to Plaintiff's allegations concerning other inmates, McGown attests that Plaintiff has never complained to him about other inmates in the MSU or any effect these inmates may have on his medical or mental health, nor has he seen any evidence to support Plaintiff's allegations

6



concerning other inmates' effect upon him, including his claims regarding the effects of being housed near allegedly mentally ill inmates.

McGown attests that Plaintiff has been housed in the same conditions, and exhibits the same physical, mental, and emotional health, from 2007 until the present according to his medical records. Plaintiff's medical records also do not reflect any serious mental health concerns, and while Plaintiff has sometimes demonstrated bizarre behavior over the years (including inserting a plastic utensil in his penile urethra), there is no viable basis to conclude to a reasonable degree of medical certainty that this behavior is related to the allegations of this litigation. Rather, Plaintiff's behavior is reflective of his attempts to receive attention and to cause the Department of Corrections to take action and incur expenses.

McGown attests that he is not aware of any correlation between the physical ailments Plaintiff alleges he experiences and his continuous exposure to artificial light. While it is possible that Plaintiff experiences increased mental stress as a result of his confinement, McGown attests that that is not atypical of incarcerated individuals within a prison setting. McGown further attests that he is not aware of any connection between cancer, heart disease, or any other ailment and exposure to artificial light, and that while Plaintiff may point to articles reflecting studies on these issues, no conclusive finding has been made as to the Plaintiff's claims, and no prominent opinion has been reached to conclude that the Plaintiff is in any danger whatsoever. McGown attests to a reasonable degree of medical certainty that Plaintiff's conditions of confinement do not place him at risk for any life threatening illnesses. See generally, McGown Affidavit, with attached Exhibits.

The Defendant Michael Beinor has also attached an affidavit wherein he attests that he is the Medical Director for the Department of Corrections. Beinor attests that Plaintiff's medical



records do not reflect any diagnosis of fatigue, sleep deprivation, or depression, nor do his medical records reflect any serious mental health concerns. Beinor further attests to the same facts and opinions as Dr. McGown with respect to Plaintiff's medical care, and opines to a reasonable degree of medical certainty that Plaintiff has at all times received appropriate medical care within professional medical standards, and that his conditions of confinement do not place him at any risk for any life threatening illnesses. See generally, Beinor Affidavit.

Finally, the Defendants have submitted an Affidavit from Dr. Michael Cross, who attests that he is a psychiatrist employed jointly by the South Carolina Department of Mental Health and the South Carolina Department of Corrections. Cross attests that he evaluates and treats inmates housed in the MSU, and is responsible for Plaintiff's mental health treatment and the regulation of his psychiatric medications. Cross attests that he currently sees the Plaintiff approximately once a month or more as needed, and that during their meetings, he assesses Plaintiff's mental health, evaluates the effectiveness of his medications, and responds to Plaintiff's mental health concerns. Cross attests that, in the majority of his meetings with the Plaintiff, Plaintiff has attempted to convince him that he should intercede on Plaintiff's behalf and order the lights in his room to be turned off. Cross attests that he has explained to the Plaintiff that the conditions of his confinement, including the continuous lighting in his cell, is a security issue and an administrative decision. Cross attests that he, as Plaintiff's physician, has no concerns with the Plaintiff's confinement, that he is not aware of any prevailing medical opinion as to the negative effects of continuous lighting on individual's mental health, and that he has evaluated the Plaintiff and has noticed no significant depression, psychosis, or mania. Cross attests that, in his professional opinion, Plaintiff has a personality disorder and exhibits antisocial behavior, but that the organization and consistence in



Plaintiff's behavior with regards to his attempts to have the lights in his cell turned off demonstrates behavior inconsistent with serious mental health problems. Cross attests that, in his professional opinion, Plaintiff does not show any physical and mental symptoms of extreme sleep deprivation, depression, psychosis, or suicidal/homicidal ideations, that Plaintiff's complaints about the lights appear to be made for his personal comfort more than to alleviate any medical concern, and that in his professional opinion Plaintiff has received and continues to receive adequate metal health care. See generally, Cross Affidavit.

In opposition to the Defendants' motion for summary judgment, Plaintiff has submitted an affidavit wherein he attests that he is housed in the MSU in a constantly illuminated cell. Plaintiff further attests that he suffers from an assortment of physical and psychological ailments, all of which he attributes to being housed in a constantly illuminated cell. Plaintiff attests that he is only able to get an average of about three hours of "restless broken sleep" every twenty-four hours, while at other times he is only able to get about one to two hours of restless sleep. Plaintiff attests that before being placed in a constantly illuminated cell, he "never had such prolonged problems with not being able to get and keep a consistent time to go to sleep and wake up." See also, Exhibit A to Affidavit [Request to Staff Member Form complaining of sleep problems]. Plaintiff further attests that on March 2, 2010, Dr. McGown diagnosed him with insomnia and prescribed him some medication. Plaintiff attests, however, that when he went to sick call on July 13, 2010 with complaints of insomnia and migraines, a new physician would not renew his prescription. Plaintiff attests that, even with the prescription, he was still only able to get about three to four hours of "somewhat decent sleep" every twenty-four hours. Plaintiff attests that the Defendants have been indifferent to his complaints, citing to the exhibits attached to his Complaint,



and that until recently medical and mental health personnel had refused to even examine him for his repeated complaints of problems with insomnia and sleep wake cycles.

Plaintiff attests that, in addition to insomnia, he suffers from migraines, and that although he has been prescribed medications for this problem, they only lesson their frequency but help little with the pain. Plaintiff complains that he suffers from migraines on average about three times a week, and attests that he never had problems with migraines until he was exposed to a constantly illuminated cell. Plaintiff attests that a "Ms. Delany" has tried to have his cell lights turned off, but the Defendant McKie has refused. Plaintiff also attests that being exposed to a constantly illuminated cell has caused problems with depression, and that he suffers from hopelessness and fatigue. Plaintiff attests that he did not have these problems prior to being placed in a constantly illuminated cell. Plaintiff asserts that there are alternatives to being kept in a constantly illuminated cell, again citing to the exhibits attached to his Complaint. Plaintiff specifically mentions installing a camera with night vision capabilities, and asserts that the Gilliam Psychiatric Hospital utilized such cameras.

Plaintiff also complains in his affidavit about being "repeatedly exposed to mentally ill inmates and their behaviors", and that repeated exposure to mentally ill inmates "has and does exacerbate my problems with migraines, insomnia, and sleep-wake cycles". Plaintiff specifically claims that his sleep is interrupted by these inmates' continuous screaming and yelling, banging on doors and walls, as well as "the foul stench of their bodily fluids . . . .". See generally, Plaintiff's Affidavit.

Plaintiff has also submitted affidavits from several other inmates, who attest that for the period of time they were housed in an observation cell in the MSU, they could not get any restful



sleep, thereby causing sleep deprivation. <u>See</u> <u>generally</u>, Motts, Shannon, Ferrell, Chavis, Lindsey, Hughes, and Smalls Affidavits.

Plaintiff has also submitted numerous exhibits, most of which appear to have been printed off of the internet, dealing with Circadian Rhythms, the Science of Sleep, Headache Disorders and Migraines, and Cancer and Cancer Treatment. Plaintiff has also submitted a copy of an Order in a case involving Dr. Beinor before the South Carolina Department of Labor Licencing and Regulation, Board of Medical Examiners; copies of some pages from his prison medical summaries; and a copy of the letter to the Plaintiff from Dr. William Hrusheski dated May 8, 2008, wherein Dr. Hrusheski opines that there is a clear connection between light exposure at night, nocturnal melatonin suppression, Circadian (daily rhythm) disruption, and increased risk for a wide variety of illnesses.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a <u>pro</u> <u>se</u> litigant to allow the development of a potentially meritorious case, <u>see</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts



11

which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

As was explained to the Plaintiff in the Report and Recommendation issued in this case on August 18, 2009, the SCDC's policy of twenty-four hour cell illumination for certain inmates, including with respect to the Plaintiff in this case, was found to pass constitutional muster in Wiles I, and Plaintiff could therefore establish a valid constitutional claim in the case at bar only if he could show through competent evidence that his *continued* placement in a cell with twenty- four hour illumination *since the conclusion of his previous case*, and/or his placement in proximity to mentally ill inmates, has resulted in a serious medical condition or conditions such that to require him to remain in such a condition of custody would amount to deliberate indifference to this serious medical needs. Pruitt v. Moore, No. 02-395, 2003 WL 23851094, at * 9 (D.S.C. Jul. 7, 2003)[Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997)["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety]. Plaintiff has failed to present any such evidence.

First, with respect to cell illumination, Plaintiff's medical records fail to support his claim that he is suffering from any serious medical condition as a result of sleep deprivation, fatigue, or related ailments. Strickler v. Waters, 989 F.2d 1375, 1379, 1381 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993)["In order to withstand summary judgment on an Eighth Amendment challenge to



prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions"]; <u>Shakka v. Smith</u>, 71 F.3d 162,166 (4th Cir. 1995)["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"]. The Defendants have submitted affidavits from three (3) physicians, all of whom attest that Plaintiff is receiving adequate medical care, and that to a reasonable degree of medical certainty Plaintiff's various medical ailments and complaints do not constitute any serious medical condition being cause by his cell illumination. The Defendants have also submitted a copy of Plaintiff's medical records for the relevant time period, which are cited by the Defendants in their affidavits.

While the Defendants have submitted medical evidence, including as noted testimony from licensed physicians, that Plaintiff has suffered no serious harm as a result of his cell illumination, Plaintiff's own evidence consisting of some abbreviated copies of his medical summaries fails to support his allegations. Plaintiff's contrary "medical" evidence, such as it is, consists of printouts from the internet relating to various medical conditions, theories, and problems, and an unsworn letter from a physician, whose credentials have not been established and who has never examined the Plaintiff (or, apparently, even reviewed his medical records), who offers a conclusory opinion concerning possible medical consequences of constant cell illumination. None of this is competent medical evidence, nor are Plaintiff's own self serving assertions in his affidavit as to the purported cause of his various ailments competent evidence. While Plaintiff may not agree

13



with the medical findings and opinions of the physicians who have examined and treated him, he cannot simply allege in a conclusory fashion that he has been harmed by the condition complained of, otherwise provide no competent supporting evidence, and expect to survive summary judgment. Papasan v. Allain, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; see also Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]. Plaintiff's cell illumination claim is therefore without merit. Chavarria v. Stacks, 102 Fed.Appx. 433, 436-437 (5th Cir. July 20, 2004)[policy of constant illumination was reasonably related to the legitimate penalogical interest of guard security and enforcement of the policy did not violate the Eighth Amendment]; Murray v. Edward's County Sheriff's Department, 248 Fed.Appx. 993, 998-999 (10th Cir. Oct. 1, 2007)[upholding summary judgment for Defendant jail officials on grounds that detainee had failed to establish that his sleep problems from continuous cell illumination were sufficiently severe to trigger the Eighth Amendment], cert. denied, 553 U.S. 1035 (2008); King v. Frank, 371 F.Supp. 2d 977, 984-985 (W.D.Wis. 2005).

With respect to Plaintiff's complaint about noise and other adverse conditions being



caused by mentally ill inmates, Plaintiff has again failed to provide any specifics or evidence to support this general and conclusory claim, or to show that the fact that mentally ill inmates may also be being housed in the MSU violates his constitutional rights. As previously noted, only extreme deprivations satisfy the objective component of an Eight Amendment claim. Shakka, 71 F.3d at 162, 166. Plaintiff cannot simply state that at times the noise level and/or smell in the MSU is of a magnitude to amount to a constitutional violation, provide no evidence of the actual noise level or any other evidence relating to the conditions which he describes or how long these periods of allegedly excessive noise and other conditions last, and expect to survive summary judgment on this claim. See Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Bagola v. Kindt, 131 F.3d 632, 646 (7th Cir. 1997) ["Although prison officials need not intend that a known risk will actually harm an inmate, they must intentionally ignore this known risk in order to be liable under the Eighth Amendment."]; cf. Lunsford v. Bennett, 17 F.3d 1574, 1580 (7ᵗʰ Cir. 1994) ["Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather then injure the prisoner does not demonstrate a disregard for the prisoner's welfare."]; Ajaj v. United States, 479 F.Supp.2d 501, 511 (D.S.C. 2007) [finding that "[w]hile plaintiff's evidence is sufficient to suggest that the noise level was unpleasant and annoying, it is not sufficient to establish either a constitutional or negligence claim"]; cf. Levy, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"] (quoting Farmer, 511 U.S. at 837). Therefore this claim should also be dismissed.



## **Conclusion**

Based on the foregoing, it is recommended that the Defendants' Motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

August 27, 2010

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).