IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Shaun Wayne Wiles, #284696, ) | C.A. No. 9:09-634-CMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION and ORDER** |
| ) | |
| Jon E. Ozmint, Director of the South ) | |
| Carolina Department of Corrections; Robert ) | |
| Ward, Director for the Division of ) | |
| Operations of SCDC; James Sligh, ) | |
| Operations Coordinator for the Division ) | |
| of Operations of SCDC; Bernard McKie, ) | |
| Warden of Kirkland Correctional ) | |
| Institution; Dr. Russell Campble, Former ) | |
| Medical Director of SCDC; Dr. Michael ) | |
| Beinor, Current Medical Director of SCDC; ) | |
| and Dr. John Solomon, Mental Health ) | |
| Director of SCDC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on Plaintiff's *pro se* complaint, filed in this court pursuant to 42 U.S.C. § 1983.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(d), DSC, this matter was referred to United States Magistrate Judge Bristow Marchant for pre-trial proceedings and a Report and Recommendation ("Report"). On Auguust 27, 2010, the Magistrate Judge issued a Report recommending that Defendants' motion for summary judgment be granted and this matter dismissed with prejudice. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and Recommendation and the serious consequences if they failed to do so. After receiving extensions of time to file objections, Plaintiff filed objections

1

to the Report on November 19, 2010.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

After conducting a *de novo* review as to objections made, and considering the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and Plaintiff's objections, the court agrees with the conclusion of the Report. Therefore, the court adopts the Report except for the statement that the constant illumination policy of the South Carolina Department of Corrections (SCDC) "passed constitutional muster" in Plaintiff's earlier case ("*Wiles I*.") Report at 12 (Dkt. #108, filed Aug. 27, 2010).

The Report indicates (and various SCDC officials believe, as evidenced by responses to Plaintiff's grievances) that the constitutionality of SCDC's policy to house certain inmates in twenty-four hour illuminated conditions "pass[ed] constitutional muster in *Wiles I* . . . ." Report at 12. *See also*, *e.g.*, Attachments to Complaint (Dkt. #1-1 at 13 (Warden McKie indicates in a response to Plaintiff's grievance that "Mr. Wiles[,] as I told you before due to your propensity to escape you have put yourself in this situation. The courts have stood by SCDC['s] decision the keep your lights on as well.")). However, this court did not reach the issue whether SCDC's policy was constitutional in *Wiles I*. Specifically, this court noted in *Wiles I* that federal circuit courts were of

2

differing opinions as to the constitutionality of constant illumination, but as Plaintiff had shown no injury, his case failed. *See Wiles v. Ozmint*, D.S.C. Civil Action No. 05-2111, Dkt. #50 at 3 (filed Aug. 7, 2006).

Determinations of the constitutionality of constant illumination of inmate cells are generally made based upon additional factual matters not presented in the current case, such as the wattage of the bulbs used, or whether the inmate is exposed to direct or indirect illumination. *See Shepard v. Ault*, 982 F. Supp. 643, 647 (N.D. Iowa 1997) ("[W]hether constant lighting serves a legitimate penological purpose depends upon the circumstances of the case."). Additionally, while Defendants present this court with a copy of SCDC Policy Number OP-22.11, this Maximum Security Unit (MSU) policy is devoid of any reference to maintaining certain individuals in constant illumination cells. Whether or not Plaintiff has a variety of privileges associated with being a "Level III" inmate (for example, whether or not he can watch television whenever he likes) does not address the question of the constitutionality of SCDC's constant illumination policy. The constitutionality of the policy itself, either as applied to Plaintiff or in the abstract, is not presented to this court in this case.[1]

The court agrees with the Report that Plaintiff has failed to establish injury of constitutional magnitude associated with his placement and maintenance in a constant illumination cell. This court has thoroughly reviewed Plaintiff's medical records. Plaintiff has complained over his years of confinement of headaches, poor sleep habits, and other issues. However, the evidence does not link

---

[1] The MSU policy provides that individuals housed in MSU may eventually earn the opportunity to step down into a less restrictive environment through a variety of reviews and evaluations. Yet the record is devoid of any information or evidence of how someone in Plaintiff's position could step down from constant illumination.

these medical complaints and conditions to the constant illumination versus other conditions of confinement.

Plaintiff's first objection is that the Magistrate Judge "downplayed" Plaintiff's evidence in finding that Plaintiff had failed to establish an injury linked to his placement in a constant illumination cell. The evidence simply does not establish that Plaintiff has suffered a specific, discernable injury from being in a constant illumination environment. Therefore, this objection is without merit.

Plaintiff's second objection regarding the affidavits filed in support of Defendants' motion for summary judgment goes to their credibility and weight, and is without merit.

Plaintiff's third and fourth objections speak to sleep deprivation, chronic insomnia, and migraines and the evidence in Plaintiff's medical records which he contends supports his position regarding the cause of his alleged injury. However, Plaintiff undermines his own position when he admits that "the actual cause of Plaintiff's migraines may be in dispute . . . ." Obj. at 12. This admission undoubtedly applies to Plaintiff's other complaints as well.[2] Therefore, these objections are overruled. They contain no new argument or evidence that was not considered by the Magistrate Judge in the Report.

Plaintiff argues in his fifth and eighth objections that the Report erred in citing certain case law "as controlling authority," Obj. at 15; that the cited cases do not address future harm, *id*. at 15-16; and that he has presented an "easy" alternative to SCDC authorities to the constant illumination

---

[2]A review of Plaintiff's medical records shows that Plaintiff has been treated with a prophylaxis of desipramine since 2006 to address his headaches. See Dkt. # 22-3 at 54 (Encounter 63) (filed June 11, 2009). The treating physicians have repeatedly refilled Plaintiff's prescription for this drug, which would be unlikely if Plaintiff had reported that it did not help.

4

of his cell, *id*. at 25.

Plaintiff does an admirable job in differentiating the cases cited by the Report from his own. Yet Plaintiff errs in arguing that the Report cites the authority as "controlling"; it is merely persuasive, as the Fourth Circuit has not ruled on this issue. As to any argument regarding future medical harm, the Eighth Amendment provides protection against conditions that have not resulted in past injury, but are reasonably likely to cause serious harm in the future. *See Helling v. McKinney*, 509 U.S. 25, 36 (1993). However, Plaintiff's arguments on this point fail because he may make out a claim for future injury only if "the conditions presenting the risk [are] 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.' " *Baze v. Rees*, 553 U.S. 35, 36 (2008) (quoting *Helling*, 509 U.S. at 33, 34-35). *See also Helling*, 509 U.S. at 36 (noting that to prove the objective component of an Eighth Amendment conditions-of-confinement claim based on exposure to environmental tobacco smoke (ETS), plaintiff must show that levels of ETS *to which he was exposed* created an unreasonable risk of damage to his future health). In this same vein, the matter of whether Plaintiff has presented an "easy alternative" to authorities does not address the issue for determination in this case: whether Plaintiff has shown an objectively serious injury sufficient to maintain an Eighth Amendment claim.

Plaintiff's sixth and seventh objections go to his allegations relating to being housed in the MSU with mentally ill inmates, the Report's finding that he (Plaintiff) has failed to show injury relating to this claim, and the Report's failure to consider the "cumulative effect" of his conditions of confinement. The court agrees with the Report, and finds that Plaintiff's arguments are without

5

merit.[3]

**QUALIFIED IMMUNITY**

Defendants moved for summary judgment based, *inter alia*, on qualified immunity. The Magistrate Judge did not reach this argument, as he found no injury. However, even assuming Plaintiff could show injury for purposes of this matter, Defendants would be entitled to summary judgment based upon qualified immunity.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Determining whether an official is entitled to qualified immunity generally requires a two-step inquiry. *See generally Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009).[4] The court must determine whether, taken in the light most

---

[3]The court notes that Plaintiff again undermines his position when he notes that "the continuous noise created by the mentally ill inmate[s'] behavior (such as banging, screaming, etc.) has and continues to exacerbate his medically diagnosed ailments . . . ." Obj. at 20. *See also id.* at 24 (lamenting the "cumulative effect" of his conditions of confinement). As this "exposure" to mentally ill inmates is at least one other unsavory factor in Plaintiff's environment, and as the "cumulative effect" affects Plaintiff's conditions, it cannot be said that the constant illumination is the only source of the ailments, nor of their "exacerbation."

[4]In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the Supreme Court held that the test for determining qualified immunity requires that the court make a two-step inquiry "in proper sequence." In *Pearson*, however, the Court found that it is not necessary that the court review these steps in a particular order, as the inquiry process is left to the court's discretion. *Pearson*, 555 U.S. at ---, 129 S. Ct. at 818. Thus, this court may first inquire whether the right allegedly violated was clearly established at the time of the alleged offense. *Id*. If the right was not clearly established at the time of the alleged offense, then the court's inquiry need go no further. *Pearson* "does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*., 555 U.S. at ---, 129 S. Ct. at 821.

6

favorable to the plaintiff, the facts alleged show that the official's conduct violated a constitutional right. *Parrish v. Cleveland*, 372 F.3d 294, 301-02 (4th Cir. 2004). If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail. *Id*. If the facts do establish such a violation, however, the court must determine whether the right violated was clearly established at the time of the alleged offense. *Id*.

In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id*. "If the right was not clearly established in the specific context of the case –that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted –then the law affords immunity from suit." *Id*. (citations and quotations omitted). "Fourth Circuit precedent is one source for determining whether the law was clearly established at the time of the alleged violation." *Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (quoting *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir.1998) (en banc)) ("In determining whether a right was clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . . .'").

"[W]hile the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (quoting *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

The issue of whether housing an individual in a constantly illuminated cell violates an inmate's Eighth Amendment rights (assuming he has alleged sufficient nexus between injury and the condition) has not been addressed by the Fourth Circuit Court of Appeals. Therefore, it cannot be said that it was clearly established that Plaintiff had an Eighth Amendment right not to be housed in a constantly illuminated cell.

Accordingly, Defendants are also entitled to qualified immunity in this action.

**CONCLUSION**

Defendants' motion for summary judgment is **granted** and this matter is dismissed with prejudice.

**IT IS SO ORDERED**.

                                        s/ Cameron McGowan Currie
                                        CAMERON McGOWAN CURRIE
                                        UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 9, 2011

C:\Documents and Settings\Guest\Local Settings\Temp\notesFFF692\09-634 Wiles v. Ozmint adopt rr more gr sumjgm.wpd